UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SABRINA L.,

                         Plaintiff,

v.                                                      3:20-CV-0191
                                                        (ML)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

LEGAL AID SOCIETY OF MID-NEW YORK, INC.                 ELIZABETH V. LOMBARDI, ESQ.
  Counsel for Plaintiff
221 South Warren Street, Suite 310
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                          AMY BLAND, ESQ.
  Counsel for Defendant                                 JAMES J. NAGELBERG, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Sabrina L. ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c) seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying her application for Supplemental Security Income

("SSI") benefits.  (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of

this Court which sets forth the procedures to be followed when appealing a denial of Social

Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 9) and Defendant's motion for judgment on the pleadings (Dkt. No. 13).  For

the reasons set forth below, Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is granted (Dkt. No. 13), the Commissioner's decision denying Plaintiff SSI benefits is affirmed, and Plaintiff's Complaint (Dkt. No. 1) is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

As of the date of the administrative hearing on April 16, 2018, Plaintiff was 47 years old. (Administrative Transcript ("T"). 21, 31, 66-67, 181.)  Plaintiff graduated from high school, where she attended regular education classes.  (T. 31, 186.)  Although Plaintiff has no past relevant work (T. 31), she reported that she is able to use public transportation, go grocery shopping, babysit her infant grandson, do laundry, feed and water pets, attend group therapy, go to doctors, go to the bank, take a vacation to Arizona, prepare meals for herself and daughter, perform light household chores, eat out at restaurants, manage her finances, read, play online games, and watch television.  (T. 25, 30, 70-75, 192-199.)  In her application, Plaintiff alleged disability beginning April 2, 2012.  (T. 21.)  Plaintiff is unmarried and lives with her daughter and infant grandson.  (T. 30, 67-68.)

### B.     Procedural History

On February 26, 2016, Plaintiff filed an application for SSI benefits, alleging disability beginning April 2, 2012, due to sciatica, obesity, an affective disorder that was variously diagnosed as depression and dysthymic disorder, an anxiety disorder that was variously diagnosed as anxiety and agoraphobia with panic attacks, personality disorder, and post-traumatic stress disorder ("PTSD").  (T. 21, 23, 185).  Plaintiff's application was denied initially on April 4, 2016.  (T. 21, 93.)  Plaintiff requested a hearing, which was held on April 16, 2018, before Administrative Law Judge ("ALJ") Mary J. Leary.  (T. 21, 63-92.)  The ALJ issued an

unfavorable decision on August 15, 2018.  (T. 21-33.)  This became the Commissioner's final decision on January 20, 2020, when the Appeals Council confirmed and adopted the ALJ's decision.  (T. 4-7.)

C.    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following ten findings of fact and conclusions of law.  (T. 21-33.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of February 25, 2016.  (T. 23.)  Second, the ALJ found that Plaintiff had the following six severe impairments: (1) sciatica; (2) obesity; (3) an affective disorder, variously diagnosed as depression and dysthymic disorder; (4) an anxiety disorder, variously diagnosed as anxiety and agoraphobia with panic attacks; (5) personality disorder, not otherwise specified; and (6) PTSD.  (T. 23-24.)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 24-27.)  More specifically, the ALJ considered Listings 1.04 (disorders of the spine), obesity,[1] 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (stressor-related disorders).  (T. 24-27.)  The ALJ also considered how Plaintiff's mental impairments may result in limitations in the following four areas of function: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and

---

[1]    Plaintiff's obesity was "not stated by any physician to be disabling, [it] was also considered in terms of its possible effects on the [Plaintiff's] ability to work and ability to perform activities of daily living.  Although obesity is no longer a listed impairment, SSR 02-1p provides important guidance on evaluating obesity in adults and child disability claims."  (T. 24.)

managing self.  (*Id.*)  Fourth, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to perform

> sedentary work, as defined in 20 CFR 416.967(a) except that she can
> understand, remember, and carry out simple instructions consistent with
> routine, repetitive, unskilled work at SVP 1 and SVP 2; she can tolerate
> occasional contact with co-workers and supervisors, but no contact with
> the general public, in a setting where the individual can complete tasks
> relatively independently and where social interaction would not be a
> primary job requirement; she can perform simple decision-making related
> to basic work functions; she can tolerate minor, infrequent changes within
> the workplace; and would likely be off-task five percent of the workday.

(T. 27-31.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 31.)  Sixth, the ALJ

found that Plaintiff was born in 1970, and was 45 years old, which is defined as a younger

individual age (between ages 45 and 49), on the date that her disability application was filed.

(*Id.*)  Seventh, the ALJ found that Plaintiff has a high school education and is able to

communicate in English.  (*Id.*)  Eighth, the ALJ found that transferability of job skills is not

material to the determination of disability because Plaintiff does not have past relevant work.

(*Id.*)  Ninth, the ALJ found that considering Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national economy that she can

perform.  (T. 31-32.)  More specifically, the vocational expert testified that, given these factors,

Plaintiff would be able to perform the requirements of representative occupations such as

document preparer, film touch-up inspector, and table worker.  (*Id.*)  Tenth, the ALJ therefore

concluded that Plaintiff had not been under a disability from February 25, 2016, through the date

of her decision.  (T. 32.)

**D.     The Parties' Briefings on the Motions**

      **1.     Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes three arguments in support of her motion for judgment on the pleadings.  (*See generally* Dkt. No. 9 at 8-23 [Pl.'s Mem. of Law].)

First, Plaintiff argues that that the ALJ improperly weighed the medical opinions of Dr. Carr and Ms. Rush.  (Dkt. No. 9 at 15-21.)  More specifically, Plaintiff argues that the ALJ (1) afforded little weight to treating providers Dr. Carr and Ms. Rush, while affording significant weight to non-examining consultant, Dr. Kamin, who prepared an opinion based on an incomplete medical record; (2) erred in (a) failing to explicitly apply the *Burgess* factors when assigning weight to the opinions of Dr. Carr and Ms. Rush, (b) failing to otherwise provide "good reasons" for the weight assigned because the use of a check-box form is not a "good reason" to discount a treating medical provider's opinion, (c) finding that the medical source statement was inconsistent with Dr. Carr and Ms. Rush's observations, Plaintiff's reported daily activities, Dr. Carr and Ms. Rush's treatment notes, (d) failing to consider that Dr. Carr and Ms. Rush's opinions are consistent with the opinion of consultative examiner—Dr. Slowik—that Plaintiff's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis," (e) failing to provide "sound reason" for crediting some portions of Dr. Slowik's opinion while declining to credit the opinion that Plaintiff was markedly limited in her ability to deal with stress, and (f) failing to consider that, to the extent Dr. Slowik's opinion was inconsistent with that of Plaintiff's treating providers, Dr. Carr and Ms. Rush spent more time examining and interacting with Plaintiff than Dr. Slowik; (3) overstated Plaintiff's activities of daily living; and (4) erred in improperly weighing the opinions of Dr. Carr and Ms. Rush, which

was not harmless error because their opinions would have satisfied the criteria for coverage. (*Id*.)

Second, Plaintiff argues that that the ALJ erred in giving "significant weight" to the medical opinion of consultative examiner Dr. Kamin.  (*Id*. at 21-24.)  More specifically, Plaintiff argues that the ALJ erred in assigning significant weight to the opinion of Dr. Kamin because (1) it was improper to rely on a non-treating, non-examining physician opinion due to the inherent subjectivity of a psychiatric diagnosis requiring personal observations of the patient; (2) Dr. Kamin reviewed Plaintiff's file and prepared an opinion before the record was complete, and reports based on an incomplete record are entitled to "little weight"; and (3) Plaintiff underwent more than two additional years of treatment for her mental health impairments subsequent to Dr. Kamin's review of her file and before the ALJ rendered her opinion.  (*Id*.)

Third, Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony was inconsistent with the evidence in the record.  (*Id*. at 24-28.)  More specifically, Plaintiff argues that the ALJ (1) erroneously used shorthand, boilerplate credibility language when making Plaintiff's credibility determination instead of clearly articulating how she evaluated Plaintiff's symptoms and credibility; (2) overstated and mischaracterized Plaintiff's daily activities while failing to articulate how Plaintiff's stated daily activities are inconsistent with the limitations that her treating providers opined; and (3) failed to consider the seven credibility factors pursuant to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).  (*Id.*)

### 2.      Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of his motion for judgment on the pleadings.  (*See generally* Dkt. No. 13 at 4-25 [Def.'s Mem. of Law].)

First, Defendant argues that substantial evidence supports the weight that the ALJ assigned to the opinions of Dr. Carr and Ms. Rush.  (Dkt. No. 13 at 5-13.)  More specifically, Defendant argues that (1) the ALJ addressed the four *Burgess* factors in that, (a) the ALJ found that the opinions of Dr. Carr and Ms. Rush were not supported by the providers' own treatment notes or consistent with the overall record (addressing *Burgess* factors two and three), (b) the ALJ acknowledged that Dr. Carr was a treating provider (accounting for *Burgess* factor four) and Ms. Rush was not an acceptable medial source entitled to any special weight, and (c) the ALJ's decision and questioning during the administrative hearing reflect that the ALJ was aware of and considered the frequency, length, nature, and extent of the treating relationship Plaintiff had with Dr. Carr and Ms. Rush (addressing *Burgess* factor one); (2) in any event, the ALJ gave "good reasons" for the weight that she assigned the treating sources' medical opinions because (a) the treatment notes consistently show that Plaintiff generally had intact mental status examinations, (b) Plaintiff reported improvement in symptoms with conservative treatment, no psychiatric hospitalizations, and feeling good at times, and (c) to the extent that there were abnormal mental status findings, the ALJ appropriately weighed them against the record as a whole; (3) the ALJ properly noted that Dr. Carr and Ms. Rush's opinions were in checkbox form with little narrative support and were inconsistent with Plaintiff's activities of daily living and the other medical evidence in the record; and (4) the record does not support a finding that Plaintiff met the requirements of Listing 12.06 because (a) Plaintiff's mental examinations contained routinely normal findings, and (b) Plaintiff engaged in a wide range of daily activities.  (*Id.*)

Second, Defendant argues that substantial evidence supports the ALJ's decision to give some weight to the opinion of Dr. Slowik.  (*Id.* at 13-15.)  More specifically, Defendant argues that (1) the ALJ was permitted to afford greater weight to Dr. Slowik's opinion than that of the treating providers because it was consistent with the evidence of Plaintiff's intact mental status examination findings, daily activities, conservative treatment, and improvement with treatment; and (2) the ALJ reasonably did not adopt Dr. Slowik's finding that Plaintiff would be markedly limited in her ability to handle stress given the examination findings, treatment record, and daily activities.  (*Id.*)

Third, Defendant argues that substantial evidence supports the ALJ's decision to give greater weight to Dr. Kamin's opinion that Plaintiff could perform the basic demands of unskilled work with limited contact with people.  (*Id.* at 15-20.)  More specifically, Defendant argues that (1) an ALJ can rely on a non-examining medical opinion in forming the RFC even where that opinion contradicts a treating physician, provided the non-examining medical opinion is supported by the evidence in the record; (2) Dr. Kamin's opinion is generally consistent with (a) the record that was replete with intact mental status examination findings, (b) Dr. Slowik's opinion, (c) noted improvements with conservative treatment, (d) no psychiatric hospitalizations or mental health emergency room visits, and (e) Plaintiff's daily activities; (3) the ALJ did not rely on Dr. Kamin's opinion alone in formulating the RFC, she relied on the record as a whole including (a) objective findings and treatment notes from the treating psychiatrist and therapist, (b) Plaintiff's improvement with conservative treatment, (c) Plaintiff's daily activities, and (d) the consultative psychologist's opinion; and (4) although Dr. Kamin did not have the benefit of the full record, the ALJ discussed the additional records and determined that subsequent treatment notes did not differ materially from the evidence Dr. Kamin reviewed.  (*Id.*)

Fourth, Defendant argues that substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptom allegations.  (*Id.* at 20-25.)  More specifically, Defendant argues that (1) the ALJ's opinion included a discussion of the medical evidence—such as intact mental status examination findings, the opinions of Dr. Kamin and Slowik, Plaintiff's improvement with treatment, the fact that Plaintiff was never hospitalized nor visited the emergency room for mental health concerns, and Plaintiff's daily activities—and reasonably concluded that Plaintiff's allegations were inconsistent with that evidence; (2) Plaintiff's "boilerplate" argument does not account for the ALJ's consideration of several pieces of evidence when evaluating Plaintiff's subjective symptoms; (3) given the ALJ's thorough discussion of the evidence, she was not required to mention every statement or explain why she considered some evidence unpersuasive or insufficient; (4) Plaintiff failed to show how any error with the ALJ's analysis was harmful; (5) the ALJ's failure to more explicitly acknowledge some of Plaintiff's activity limitations does not require remand because (a) the RFC limited Plaintiff to no contact with the public and in a setting where social interaction would not be a primary job requirement, (b) the ALJ's findings support that Plaintiff had no more than a moderate limitation in interacting with others given that she was cooperative during appointments and engaged in group therapy, (c) the ALJ's findings regarding Plaintiff's ability to concentrate was supported by treatment notes showing her intact memory and ability to maintain focus, and (d) the ALJ's consideration of Plaintiff's ability to babysit was appropriate when she considered Plaintiff's disabling mental limitations; and (6) the ALJ noted that she was complying with the requirements of 20 C.F.R. § 416.929 and SSR 16-3p and considered all the evidence related to the enumerated factors.  (*Id.*)

II.   **APPLICABLE LEGAL STANDARDS**

A.   **Standard of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

> **B.      Standard for Benefits[2]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

---

[2]      The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or combination
> of impairments; (3) whether the impairment meets or equals the severity
> of the specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Properly Weighed the Medical Opinions

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 13 at 4-20.)  To those reasons, the

Court adds the following analysis, which is intended to supplement but not supplant Defendant's

reasons.[3]

#### 1.    The ALJ's Assignment of "Little Weight" to the Opinions of Treating Providers Dr. Carr and Ms. Rush

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R.

§ 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of

---

[3]    On January 18, 2017, the Social Security Administration ("SSA") published a final rule
that changed the protocol for evaluating medical opinion evidence.  *See* Revisions to Rules

the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

(quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations in

which the treating physician's opinion is not entitled to controlling weight, when the ALJ must

"explicitly consider, inter alia[, the following]: (1) the frequency, length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist."

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

Nonetheless, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not

required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v.*

*Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at \*4 (N.D.N.Y. Jan. 23, 2017) (Carter,

M.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), r*eport and recommendation*

*adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.).  After considering these

factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a

treating physician's opinion.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The

failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is

a ground for remand.'"  *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

　　　　Inconsistency with objective findings, or lack of support from the record, can constitute

good reason for rejecting an opinion, even from a treating physician.  *See Otts v. Comm'r of Soc.*

---

Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017)
(codified at 20 C.F.R. §§ 404 & 416).  Those new regulations apply only to claims filed with the
SSA on or after March 27, 2017.  Because Plaintiff's claim was filed before that date, to the
extent that the regulations are cited, the Court refers to versions of the regulations that were in
effect prior to March 27, 2017.

*Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled)) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"); *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007) (Bianchini, M.J.)) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.").

Here, there is substantial evidence to support the ALJ's assignment of "little weight" to the opinions of treating providers Dr. Carr and Ms. Rush.  For example, the ALJ provided a detailed account of numerous treatment notes from 2016 (including times before Plaintiff's application), through 2018.  (T. 30-31.)  The ALJ also noted that Dr. Carr's and Ms. Rush's "check-box form[s]," were given less weight because their findings were inconsistent with the overall medical record and Plaintiff's "own reported daily activities, which include babysitting her infant grandson, using public transportation, preparing meals, performing light household chores, going shopping, managing her finances, eating out at restaurants, reading, playing online games, and watching both television and movies . . ."  (T. 30.)  Moreover, the ALJ noted that the "anxiety-listing analysis" that Dr. Carr and Ms. Rush completed are "widely inconsistent" with the medical records, including their own observations, which showed Plaintiff to "exhibit intact memory and cognitive function, a normal mood and affect, good attention and concentration, and at least 'fair' judgment and insight during examinations."  (T. 30-31.)

As a result, the Court finds that substantial evidence supports the ALJ's assignment of "little weight" to the opinions of treating providers Dr. Carr and Ms. Rush.  *See Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552 (2d Cir. 2018) (holding that an ALJ may set aside a treating physician's opinion where there is contradiction by the weight of other evidence in the record); *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent."); *Saxon*, 781 F. Supp. 2d at 102 (citing *Stevens*, 473 F. Supp. 2d at 362) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.").

### 2.    The ALJ's Assignment of "Some Weight" to Dr. Slowik's Opinion

"An ALJ may credit some portion of a consultative opinion, while properly declining to credit those conclusions that are not supported by [consultative examiner's] own examination findings or are inconsistent with other evidence of record."  *Mark H. v. Comm'r of Soc. Sec.*,18-CV-1347, 2020 WL 1434115, at *8 (N.D.N.Y. Mar. 23, 2020) (Baxter, M.J.) (citing *Cruz v. Colvin*, 13-CV-0723, 2014 WL 4826684, *14 (N.D.N.Y. Sept. 29, 2014) (D'Agostino, J.)). "Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

Here, the ALJ appropriately assigned "some weight" to Dr. Slowik's opinion after considering the rest of the record, Dr. Kamin's opinion, and numerous treatment notes.  (T. 29-30.)  The ALJ noted some consistencies between Dr. Slowik's opinion and the medical records and some inconsistencies between Dr. Slowik's opinion and other aspects of the record, including Plaintiff's hearing testimony.  (*Id.*)  For example, the ALJ found that Dr. Slowik's

opinion was entitled to "some weight" because it was consistent with the records evincing Plaintiff's intact memory and cognitive function, largely normal mood and affect, good attention and concentration, and at least "fair" judgment and insight. (*Id.*) In contrast, the ALJ found that Dr. Slowik's opinion that Plaintiff was "markedly limited" in her ability to deal with stress, is inconsistent with those same observations and Plaintiff's daily activities. (*Id.*)

As a result, the Court finds that substantial evidence supports the ALJ's assignment of "some weight" to Dr. Slowik's opinion. *See Mark H.*, 2020 WL 1434115, at *8 (holding that "[a] consultative examiner's *medical* determination that a claimant does not have a particular limitation is not necessarily incompatible with an ALJ's *legal* determination that such a limitation is 'severe.'"); *Medovich v. Colvin*, 13-CV-1244, 2015 WL 1310310, at *11 (N.D.N.Y. Mar. 23, 2015) (Sharpe, J.) (holding that the ALJ did not err with respect to the treating physician rule or in assigning some weight to the opinion of a physician who examined the claimant only one time); *Schmitt v. Astrue*, 11-CV-0796, 2012 WL 4853506, at *9 (N.D.N.Y. July 24, 2012) (Baxter, M.J.) (holding that the ALJ made an appropriate function-by-function RFC determination supported by substantial evidence where the ALJ relied on the consultative examiner's opinion that the plaintiff had, *inter alia*, no gross limitation sitting, standing, or walking), *report-recommendation adopted*, 2012 WL 4853067 (N.D.N.Y. Oct 11, 2012) (Kahn, J.).

### 3. The ALJ's Assignment of "Significant Weight" to the Opinion of Non-Treating, Non-Examining Consultative Physician Dr. Kamin

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. § 404.1527(c)(1)-(6). In general, "the weight assigned to a nonexamining

16

source's opinions 'depend[s] on the degree to which they provide supporting explanations for their opinions.'" *Nieves v. Astrue*, 08-CV-0311, 2009 WL 2601237, at \*4 (N.D.N.Y. Aug 20, 2009) (Sharpe, J.) (quoting 20 C.F.R. § 416.927(d)(3)).  "[W]hile an ALJ is free . . . to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him."  *McBrayer v. Sec'y of HHS*, 712 F.2d 795, 799 (2d Cir. 1983).

Here, the ALJ appropriately assigned "significant weight" to the opinion of non-treating, non-examining Dr. Kamin because Dr. Kamin provided significant supporting explanations, which the ALJ found to be consistent with the medical record as a whole.  (T. 29.)  For example, Dr. Kamin relied on Plaintiff's medical records through March 2016, daily activities, and the opinion of Dr. Slowik.  (*Id.*; T. 94-104.)  The ALJ noted that Dr. Kamin's opinion was consistent with the observations of Plaintiff's other providers that Plaintiff exhibited "intact memory and cognitive function, a largely normal mood and affect, good attention and concentration, and at least 'fair' judgement and insight."  (T. 29.)  Moreover, based on the extensive citations to the record, it is clear that the ALJ considered the record as a whole—including records after 2016—when concluding that Dr. Kamin's opinion was consistent with the medical evidence.  (*Id.*)

In addition, the Second Circuit has permitted the opinions of non-treating sources to override the opinions of treating physicians (even when evaluating mental impairments), provided that the non-treating opinion is supported by the medical record.  *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995)).  Moreover, "[n]o case or regulation . . . imposes an unqualified rule that a medical opinion is superseded by additional material in the record" where "the additional evidence does not raise doubts as to the reliability of the" opinion.  *Camille*, 625 F. App'x at 28, n.4.

Here, the ALJ considered and discussed Plaintiff's medical records that post-dated Dr. Kamin's opinion.  (T. 29-31.)  In addition, the medical evidence did not reflect a significant deterioration in Plaintiff's condition—in fact, the record suggested that Plaintiff improved with conservative treatment.  (T. 29-31.)

As a result, the Court finds that it was appropriate for the ALJ to afford "significant weight" to Dr. Kamin's opinion.  *See Diaz*, 59 F.3d at 313 ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (citation omitted) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.")

### B.    Whether Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Subjective Symptoms

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13 at 20-25.)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.

An ALJ is required to consider a claimant's s subjective symptoms and the extent to which they are consistent with the record.  20 C.F.R. § 416.929.  The ALJ is also required to consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as the claimant's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of

the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.").

In addition, an ALJ must specify the functions the claimant is capable of performing and may not simply make conclusory statements regarding a claimant's capacities. *Roat,* 717 F. Supp. 2d at 267; *accord Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.); *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings must specify the functions the plaintiff is capable of performing, conclusory statements regarding the plaintiff's capacities are not sufficient."). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7). "[A] claimant's credibility may be questioned if [claimant's s subjective symptoms are] inconsistent with the medical evidence . . ." *Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 612 (N.D.N.Y. 2013) (Mordue, J.).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained

in this decision."  (T. 28.)  As set forth in Part III.A. of this Decision and Order, the ALJ

highlighted, *inter alia*, Plaintiff's largely intact mental status examination findings (T.29-31), the

opinions of Dr. Kamin and Dr. Slowik (T. 29-30), Plaintiff's improvement with conservative

treatment (T. 29), the fact that Plaintiff had not been hospitalized nor visited the emergency room

for mental health concerns (T. 29), and Plaintiff's daily activities (T. 25-26), all of which were

inconsistent with Plaintiff's alleged subjective symptoms.

As a result, substantial evidence supports the ALJ's assessment of Plaintiff's subjective

symptoms.  *See Kristen B. v. Comm'r of Soc. Sec.*, 20-CV-0032, 2021 WL 950509, at *13

(N.D.N.Y. Mar. 12, 2021) (Lovric, M.J.) (holding that the ALJ reasonably considered the

plaintiff's subjective evidence when the ALJ resolved conflicts with the plaintiff's testimony, the

medical opinion evidence, treatment notes, and other evidence in the record to assess the RFC).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 24, 2021
       Binghamton, New York

                                    Hon. Miroslav Lovric
                                    United States Magistrate Judge